IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-00417-MOC-DCK

| | |
|---|---|
| KENNETH L. BRYANT, BRYANT & ASSOCIATES, LLC, | : |
| Plaintiffs, | : |
| -v- | : |
| CAPGEMINI FINANCIAL SERVICES USA, INC., | : |
| Defendants. | : |

# REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF ILLINOIS

## STATEMENT IN REPLY

Plaintiffs ignore the relevant standard for transfer. As set forth in Capgemini's Opening Brief[1], under the law of the United States Supreme Court and the Fourth Circuit, a party seeking to avoid a forum selection clause bears a "heavy burden" of proof to demonstrate that "exceptional circumstances" exist warranting non-enforcement of the clause. Plaintiffs do not even address, let alone attempt to meet, this high standard. Instead, Plaintiffs merely argue that North Carolina has a greater connection to this case than Illinois.

Even were this sufficient to avoid enforcement of the forum selection clause -- and it is not -- Plaintiffs make numerous unsupported assertions that, once examined, underscore that Plaintiffs fail to meet their heavy burden. For example, Plaintiffs claim that "[u]pon information and belief, Roy Stansbury of Capgemini signed the aforementioned documents [the Agreement] in North Carolina." *See* Bryant Decl. ¶ 47 (Dock. No. 18). Therefore, Plaintiffs argue, North

---

[1] Abbreviations used in Capgemini's Memorandum In Support of Defendant's Motion to Transfer Venue to the Northern District of Illinois, filed on July 17, 2012, Dock. No. 4 ("Capgemini's Opening Brief" or "Capgemini Br.") are used herein.

Carolina law applies, particularly N.C. Gen. Stat. § 22B-3, which provides that forum selection clauses in contracts entered into in North Carolina that require litigation in other states are inconsistent with North Carolina public policy.

However, Stansbury -- on behalf of Capgemini, the last party to sign the Agreement -- executed the Agreement in <u>Illinois</u>. (Spring Decl. ¶¶ 7-9)  Therefore, under North Carolina law, the contract was formed in Illinois and N.C. Gen. Stat § 22B-3 is <u>inapplicable</u>.  As another example, although Plaintiffs claim in conclusory fashion that Bryant is a "citizen" of North Carolina, not Georgia, Plaintiffs have introduced no specific evidence that either plaintiff has an address in North Carolina.  (*See* Argument § I, *infra*).

Plaintiffs also attempt to avoid transfer by arguing that the forum selection clause does not apply because their claims do not involve an action for breach of the written Agreement. This is simply incorrect, as Plaintiffs specifically plead the existence of the Agreement, the extensions thereto, and that Capgemini breached the Agreement because "the Defendant failed to give the Plaintiff proper notification that the Defendant would not renew the contract." (Compl. ¶¶ 6-7, 95-96)  The notice requirements for termination are governed by the Agreement itself (*i.e.*, the contract is terminable at will).   The Agreement also specifically covers Plaintiffs' purported tort claims relating to his rights to documents and e-mails that constitute Capgemini Work Product and Confidential Information, which are defined terms.  (*See* Argument § II, *infra*.)

Plaintiffs further argue that the forum selection clause does not apply to Bryant because he did not sign the Contractor Agreement in his individual capacity.  However, under well-settled law, Bryant, as the sole member and only employee of Bryant & Associates who is specifically identified in the SOW as the individual to be tasked with working on the

engagement, is a "closely related" party and a "transaction participant", and therefore the forum selection clause applies to him.  Further, Bryant individually agreed to a similar forum selection clause in the Confidentiality Agreement he executed that covers his claims for the return of materials and e-mails constituting Capgemini Work Product and Confidential Information. Capgemini is an express intended third-party beneficiary thereof with the right to enforce that agreement (Confidentiality Agt. p. 1 § 3).  (*See* Argument § III, *infra*).

## ARGUMENT

I.  **PLAINTIFFS FAIL TO MEET THEIR HEAVY BURDEN OF SHOWING THAT EXCEPTIONAL CIRCUMSTANCES EXIST.**

As set forth in Capgemini's Opening Brief, Plaintiffs have to meet a "'heavy burden of proof' demonstrating an exceptional circumstance that would warrant non-enforcement of the forum selection clause."  *Southern Farm Supply, Inc. v. Arctic Cat Sales, Inc.*, 2011 WL 2791247, *6 (W.D.N.C. July 14, 2011) (*quoting Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991) (holding that consumer-passenger on a cruise ship is bound by a forum selection clause on the back of ticket)).  Plaintiffs' argument essentially boils down to their claim that North Carolina has a greater connection to this case than Illinois and that therefore it would be more "fair" for the case to remain in North Carolina.  "However, in cases lying in freely entered into contracts such as this one, the notion of fairness proceeds from the fact that each party assumed burdens and acquired advantages that it perceived as balanced at the outset.  Nothing has been brought forth here to upset that balance."  *Southern Farm*, 2011 WL 2791247 at *6. As more fully set forth below, "[b]ecause [the 1404] factors fail to tip the balance of factors in favor of non-enforcement of the clause the Plaintiff[s] ha[ve] not met [their] burden and the forum selection clause should be enforced."  *Id.*

3

### A. Plaintiff's Initial Choice of Forum is Illinois and That Is Entitled to Substantial Weight.

Plaintiffs do not dispute, as set forth in Capgemini's Opening Brief, that recent case law in this Circuit provides that courts should consider "plaintiff's initial choice of forum to be the forum that is contractually agreed upon." *Southern Farm*, 2011 WL 2791247 at *5 (*quoting AC Controls Co., Inc. v. Pomeroy Computer Resources, Inc.*, 284 F. Supp. 2d 357, 363 (W.D.N.C. 2003) (a valid forum selection clause eliminates the deference ordinarily afforded to plaintiff's choice of forum)). Accordingly, this factor heavily favors transfer because the parties freely contracted in the Contractor Agreement and the Confidentiality Agreement to resolve disputes in Illinois. *Southern Farm*, 2011 WL 2791247 at *5.

### B. The Residence of the Parties Favors Transfer.

Plaintiffs do not dispute that Capgemini is an Illinois corporation headquartered in Rosemont, Illinois. Although Plaintiffs argue that Capgemini's Charlotte office is its largest, this is simply untrue. Capgemini's Rosemont, IL office (890 employees) and New York office (307 employees), for example, are much larger. The Charlotte office only has 179 employees. (Spring Decl. Ex. A p. 2). In any event, there is no dispute that Capgemini's management is based in Illinois and that therefore Illinois is truly its principal place of business.

Plaintiffs concede that Bryant & Associates is incorporated in Delaware, but attempt to dismiss its stated address at 2711 Centerville Road, Suite 120, Wilmington Delaware, as merely that of its "registered agent." (Bryant Decl. ¶ 6) However, Plaintiff used that address in the Contractor Agreement (First Recital Paragraph) and on its website. (Jones Decl. Ex. F) Further, Bryant has stated that this Delaware address is actually the <u>physical</u> <u>address</u> for Bryant & Associates:

4

> "My <u>physical</u> address is:
> Bryant & Associates, LLC
> 2711 Centerville Road, Ste 120
> Wilmington, DE 19808"

(Spring Decl. Ex. A p. 2 (emphasis added)).

Although Bryant claims in conclusory fashion that he is a "citizen" of North Carolina (Bryant Decl. ¶ 2), he submits no specific evidence in support, and does not provide a street address, city or county in North Carolina where he claims he principally resides. He does not dispute, as set forth in Capgemini's Opening Brief, that he has used a business address in Georgia. (*See* Bryant Decl. ¶ 3; Jones Decl. Ex. E). Although Bryant claims that the website posting his address in Georgia is a "franchise owned by another person", he does not deny that he himself posted and wrote the information for that site, which lists the address of "224 Chattooga Way, Hiawassee, GA, 30546," (Jones Decl. Ex. E p. 1), or deny that he uses the address. Further, although Bryant claims this is just a business "mailing" address (Bryant Decl. ¶ 3), the information he posted on said website, to the contrary, suggests possible residential use of the Georgia address:

> I was born and raised in South Florida and I have lived and worked all over the world. <u>After living overseas, I moved back to the US and I could have lived anywhere in the world but I very carefully chose this area because of its natural beauty</u>, location/proximity, climate, geography, schools and services, cost of living and quality of life.

(Jones Decl. Ex. E p. 2 (emphasis added)). Setting aside conclusory statements, there is no specific evidence in the record to this point to establish Bryant, individually, is a resident of North Carolina.[2]

---

[2] Although Bryant points to his phone number as having a North Carolina area code (828) (Bryant Decl. ¶ 4), this is a mobile phone number (Jones Decl. Ex. E p. 1) and therefore is not an indication of where Bryant is domiciled.

5

Thus, Illinois, not North Carolina, is the <u>state where at least one party has evidenced an address</u> (Capgemini). Transfer to Illinois is certainly not unreasonable.

    **C.**    **<u>Relative Ease of Access of Proof is Equal.</u>**

    **D.**    **<u>Availability Of Compulsory Process For Attendance Of Witnesses Weighs In Favor Of Capgemini.</u>**

Stansbury is Managing Director of Capgemini, he lives in Illinois and works in Capgemini's Rosemont, IL office. (Spring Decl. ¶¶ 1-4) Stansbury is obviously Capgemini's key witness, as Plaintiffs claim that it was Stansbury who allegedly promised to extend the Agreement and allegedly promised to give notice if he changed his mind.[3] Jones, Capgemini's in-house counsel who lives and works in Illinois, may testify as to why Capgemini believes that certain of the material sought by Bryant belongs to Capgemini or its client HSBC under both the terms of the Agreement and under Capgemini's internal policies pertaining to confidentiality and ownership of e-mails sent and received on the Capgemini e-mail system.

Similarly, Capgemini employees Sathe, Kumar and also Suhas Rao, all located in Illinois, led the HSBC pursuit Plaintiffs were assisting with and will testify as to whether the documents Plaintiffs prepared and/or are seeking to recover were created as part of that work and are therefore Work Product or Confidential Information. Although Bryant now claims that Sathe and Kumar "ha[ve] no knowledge of the matters at issue in this litigation" and "have no knowledge or information that bears on whether the documents at issue are the property of the Plaintiffs" (Bryant Decl. ¶¶ 27-29), this is directly contrary to his counsel's assertion prior to the motion to transfer. Plaintiffs' counsel wrote:

---

[3] It should be noted that Capgemini will at the appropriate juncture deny Plaintiffs' allegations on the merits of all of their claims. Although, for purposes of this motion to transfer only, Plaintiffs' well-pleaded allegations on the merits are not disputed herein, this should not be construed as an admission that such allegations are accurate. In fact, they are not.

6

> In any event, regarding items 4-7 on the Capgemini inventory, the Capgemini legal department would likely have no basis for determining whether these are the property of Mr. Bryant or of Capgemini. Only Capgemini employees with knowledge of Mr. Bryant's work at Capgemini, such as Suhas Rao, or Capgemini employees with knowledge of the mutually shared client relationship, such as Krithika Kumar, would ever be in a position to opine on these matters. Having said that, the titles, subject matter and date leave no doubt that these documents did not in any way emanate from Mr. Bryant's relationship with Capgemini.

(Jones Decl. Ex. D p. 2).

Thus, at least four witnesses are in Illinois. As set forth above, Bryant & Associates is in Delaware and the only address in the record for Bryant is in Georgia. While there are admittedly witnesses in North Carolina, under modern discovery rules there are certainly means to access these witnesses for discovery and testimony.

### E. **Possibility Of A View, Enforceability Of A Judgment Is Equal.**

### F. **Advantages And Obstacles To A Fair Trial Is Equal.**

### G. **Other Practical Problems That Make A Trial Easy, Expeditious and Inexpensive Are Equal.**

### H. **Administrative Difficulties Of Court Congestion Is Neutral.**

The parties concede that these factors are neutral. Although Plaintiffs claim a view of the parking garage might be helpful with regard to their unlawful imprisonment claim, there are no exceptional circumstances alleged making a view of the garage required.

### I. **Interest In Having A Forum That Is At Home With The State Law That Governs/Unnecessary Conflict Of Laws Favors Transfer.**

The Agreement provides that Illinois law applies. Further, under the North Carolina choice of law rules, since Stansbury was the last person to execute the Agreement and he did so in Illinois, the contract is deemed to be entered into in Illinois. "The last act of signing the contract [is] an essential element to formation", and a contract is formed where the last party

7

signs it.  *Szymczyk v. Signs Now Corporation*, 168 N.C. App. 182, 187, 606 S.E.2d 728, 733 (2005) (when plaintiff signed the agreement in North Carolina and sent it to defendant whose president signed the agreement in Florida, the "contract was formed in Florida"); *Parson v. Oasis Legal Finance, LLC*, 715 S.E.2d 240, 244 (N.C. App. 2011) ("as the signature of the *Oasis* representative was made in Illinois, the contract was formed in Illinois . . . accordingly, the court erred in its conclusion that the agreement between Oasis and plaintiff was entered into in North Carolina").

Significantly, when a contract is formed in a state other than North Carolina, "N.C. Gen. Stat. § 22-B-3 [providing that forum selection clauses requiring litigation in other states is against North Carolina public policy] does not apply to the forum selection clause in the instant agreement."  *Szymczyk*, 168 N.C. App. At 187, 606 S.E.2d at 733; *Oasis*, 715 S.E.2d at 244.  Hence, N.C. Gen Stat § 22-B-3 is inapplicable to the transfer issues presented here.

Illinois is therefore the forum that is at home with the state law that governs.  Thus, this factor weighs heavily in favor of transfer.

\*     \*     \*

Recent, current law is well-established that a party must meet a heavy burden to show that exceptional circumstances exist warranting non-enforcement of a forum selection clause. *Southern Farm*, 2011 WL 2791247 at \*5 ("[i]t is important to note that the Supreme Court has acknowledged that a valid forum selection clause is given controlling weight in all but the most exceptional case" (internal quotation omitted)); *Tracy v. Loram Maintenance of Way, Inc.*, 2011 WL 2791257, \*5 (W.D.N.C. July 14, 2011 ("[t]he Supreme Court has noted that "a valid forum selection clause is given controlling weight in all but the most exceptional case") (*quoting Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)); *Giammattei v. Bertram*

*Yacht, Inc.*, 2010 WL 2593612, *6 (W.D.N.C. June 23, 2010) (plaintiff bears "heavy burden proof" of demonstrating an "exceptional circumstance" exists making enforcement of the clause unreasonable or unjust).

Plaintiffs do not address or attempt to distinguish the cases setting forth this standard, let alone try to meet the heavy burden of demonstrating exceptional circumstances exist here. Instead, Plaintiffs rely heavily on an older case, *Rice v. Bellsouth Advertising & Publishing Corp.*, 240 F. Supp.2d 526 (W.D.N.C. 2002). That decision, now ten years old, did not apply the relevant standard that has become the law in this Circuit, namely that a Plaintiff bears a heavy burden to avoid a forum selection clause and must show that exceptional circumstances exist. Instead, in *Rice*, the court merely conducted an even "weighing" of the factors. *Rice*, 240 F. Supp.2d at 531. What has become the standard in this District was better stated by the Magistrate Judge's Memorandum and Recommendation in *Rice*:

> While this court is not unsympathetic to plaintiffs' position, they have not demonstrated that the forum-selection clause is unreasonable so as to make the remaining factors override the contractual choice of forum. Provisions concerning the venue for litigation are now common in the marketplace, and where the Supreme Court will hold a consumer-passenger to a forum-selection clause on the back of a ticket, as it did in *Carnival, supra*, it is hard to fathom how any court could find that plaintiffs, who are apparently doing business under a number of corporate names, are any less sophisticated than the consumer in *Carnival*. The undersigned, therefore, will recommend to the district court that this matter be transferred in accordance with 28, United States Code, Section 1404(a), to the Northern District of Georgia for disposition.

*Rice v. Bellsouth Advertising & Publishing Corp.*, 2002 WL 1767409, *7, 2002 U.S. Dist. Lexis 13129, *18-19 (W.D.N.C. July 16, 2002, Cogburn, M.J.) (attached as Ex. A) (*rev'd Rice v. Bellsouth Advertising & Publishing Corp.*, 240 F. Supp.2d 526 (W.D.N.C. 2002). This standard should apply here.

In any event, *Rice* is distinguishable because, in that case, North Carolina law, and particularly N.C. Gen. Stat. § 22B-3, applied. Here, the Agreement was indisputably entered into in Illinois, Illinois law governs, and § 22B-3 does not apply. Moreover, in *Rice*, unlike here, the plaintiff never even performed work in the state enumerated in the forum selection clause. Here, Plaintiffs admit that they traveled to Illinois for meetings on at least three or four occasions (Bryant Decl. ¶ 14), and the Agreement itself provides that the work will be done in Illinois (SOW p. 1).[4] In sum, Plaintiffs failed to show exceptionable circumstances necessary to avoid the forum selection clause that requires transfer to Illinois.

## II. THE FORUM SELECTION CLAUSE APPLIES TO PLAINTIFFS' CLAIMS.

Plaintiffs ignore the first sentence of the forum selection clause in arguing that "[t]he Contractor Agreement simply says 'Contractor agrees to sole jurisdiction and venue in any state or federal court in Cook County, Illinois'" and is therefore ambiguous. The first sentence of that same clause makes it clear that the clause applies to disputes <u>pertaining</u> <u>to</u> <u>the</u> <u>Agreement</u>:

> <u>Governing Law</u>. <u>This</u> <u>Agreement</u> shall be interpreted, construed and governed by the laws of the State of Illinois, without regard to its choice of law principles. <u>Contractor</u> <u>agrees</u> <u>to</u> <u>sole</u> <u>jurisdiction</u> <u>and</u> <u>venue</u> <u>in</u> <u>any</u> <u>state</u> <u>or</u> <u>federal</u> <u>court</u> <u>in</u> <u>Cook</u> <u>County,</u> <u>Illinois</u>. Notwithstanding the foregoing, Capgemini may seek and obtain injunctive relief against Contractor in the courts having jurisdiction over Contractor.

---

[4] The *Pearson* case relied on by Plaintiffs is similarly inapplicable because in that case the court failed to apply what is now the standard in this Circuit, *i.e.*, heavy burden of showing exceptional circumstances. It is also easily distinguishable, because in that case, unlike here, the agreement was solely between North Carolina corporations, the contract was entered into in North Carolina, and was performed solely in North Carolina. Further, it was alleged in *Pearson* that plaintiff's wife had suffered multiple strokes requiring plaintiff's constant care and that therefore he could not travel. *See Curtis Pearson Music Company v. McFadyen Music, Inc.*, 2005 U.S. Dist. LEXIS 11196, *15 - *17 (M.D.N.C. June 3, 2005). Nothing of the sort is alleged here. Rather, the evidence is that Bryant is a frequent traveler to many states (Jones Decl. Ex. E).

10

(Contractor Agt. § 13.6 (emphasis added))  Read together, these sentences clearly mean that any litigation involving the Agreement must be pursued exclusively in Illinois.  This is not ambiguous.  In any event, Plaintiffs' argument that any ambiguity should be construed as against Capgemini as drafter fails, because the Agreement expressly provides that no ambiguity may be construed against either party as drafter.  (Contractor Agt. § 13.11)

### A. <u>Plaintiffs' Contract Claims Are Covered By The Agreement And The Forum Selection Clause.</u>

In an attempt to avoid enforcement of the forum selection clause, Plaintiffs try to de-emphasize their breach of contract claims after-the-fact, and argue that this is really a tort case extraneous from the written Agreement.  This argument fails.

First of all, the very basis and underpinning of Plaintiffs' Complaint is the written Agreement.  Plaintiffs allege that "[o]n or about August 29, 2011 [the date the written Agreement was signed by Plaintiffs], Bryant & Associates, LLC, through its managing director Kenneth L. Bryant, entered into a contractor agreement with Defendant, pursuant to which the Plaintiffs [*i.e.*, both Bryant Associates and Bryant] agreed to provide services to the Defendant."  (Compl. ¶ 6)  Plaintiffs further plead that this Agreement was extended through and including February 28, 2012.  (Compl. ¶¶ 7, 16)  In the "Fifth Claim for Relief", both "Plaintiffs" allege that Capgemini breached the Agreement by failing to provide proper notice:

> The Defendant breached its agreement to renew the Plaintiff's contract, and the Defendant failed to give the Plaintiff proper notification that he Defendant would not renew the contract.
>
> The Plaintiff lost other business, opportunity, revenue and profits as a result of the Defendant's aforementioned breaches of contract and agreement.

(Complaint ¶¶ 94-96)  Plaintiffs clearly assert a breach of the written Agreement.

Plaintiffs also claim that Capgemini's alleged oral promises pertaining to renewal are separate and apart from the Agreement. This argument fails as well. First of all, the SOW, as extended, expired by its very terms and no notice was required. (Jones Decl. Ex. 1) Thus, the SOW, which is part of the overall Agreement, governs this claim. Second, section 3.2 of the Contractor Agreement specifically provides that "Capgemini may terminate this Agreement or all or part of any Statement of Work, with or without cause, immediately upon written notice to Contractor," and, therefore, the Agreement applies for this reason as well. Although Plaintiffs claim that they were orally promised otherwise, the Contractor Agreement provides that such oral promises are unenforceable, stating: "Except as provided expressly herein, the Agreement shall not be modified, amended or in any way altered <u>except by a writing executed by both of the parties</u>." (Contractor Agreement § 13.2 (emphasis added)) Hence, the breach of contract claims all pertain to the Agreement.

### B. <u>Plaintiffs' Tort Claims Are Covered By The Agreement And the Forum Selection Clause</u>.

To avoid transfer, Plaintiffs highlight their tort claims, *i.e.,* conversion (failure to return property after termination, including documents and e-mails), trespass to chattels (same), possession of property (same), negligence (in handling of property after termination, in negligently misrepresenting that the contract would be renewed, negligently investigating complaints about Bryant lodged by Capgemini employees to which the e-mails relate, and negligently asking office building security to escort Bryant out of the office after termination), negligent misrepresentation (allegedly misstating that the contract would be renewed), false imprisonment (pertaining to acts by office building security), and claim and delivery (return of property).

12

First, the negligence claim, at least in part, and the negligent misrepresentation claim both relate to whether Capgemini was within its rights in allowing the contract to terminate. These claims directly relate to the Agreement itself, as more fully set forth in Section II(A), *supra*.

Second, Plaintiffs' claims for conversion, trespass to chattels, possession of property, negligence (in part), and claim and delivery all relate to Capgemini's alleged failure to return property, documents and e-mails. As an initial matter, all of these claims arise from the parties' contractual relationship and therefore are covered by the forum selection clause.

"[S]everal courts in this district have found that forum selection clauses apply not only to contract claims, but to contract-related tort claims." *See Tracy*, 2011 WL 279127 at *4 (*see also* cases cited therein). "Pleading alternative non-contractual theories are not alone enough to avoid a forum selection claims if the claims asserted <u>arise</u> <u>out</u> <u>of</u> <u>the</u> <u>contractual</u> <u>relation</u> and implicate the contract's terms." *Id.* (internal quotation omitted) (emphasis added).

Further, these claims are clearly implicated by and encompassed within the Agreement. Plaintiffs claim that e-mails sent and received on the Capgemini system during the course of performing the Agreement are theirs. Plaintiffs also claim that certain materials used in performing those services were created prior to the Agreement and are therefore theirs as well. Capgemini disputes each of these claims, and the Agreement itself is highly relevant thereto.

For example, the Intellectual Property provision in the Contractor Agreement provides that "Capgemini shall retain all right, title and ownership in and to all Work Product" (Contractor Agt. § 6.2), which is defined very broadly and includes all "materials . . . and other documentation" that are "prepared by Contractor in connection with the Agreement" (Contractor Agt. § 14.3). The e-mails described above were clearly prepared by Plaintiffs in connection with the Agreement and are therefore Capgemini's Work Product. Similarly, if the HSBC-related

13

materials Plaintiffs claim were prepared prior to Agreement were actually prepared in the course thereof, which is an issue in this case, they would be Work Product as well.

In addition, the Contractor Agreement provides for the return of all Confidential Information in possession of Plaintiffs:

> <u>Return of Confidential Information</u>. Upon the request of Capgemini, Contractor shall promptly return to Capgemini all materials containing Confidential Information and any copies thereof. Furthermore, upon the return thereof, Contractor shall cause one of its officers or principles to certify to Capgemini in writing that Contractor has complied with this Section 7.

(Contractor Agt. § 7.5) "Confidential Information" includes, *inter alia*, any "writings" pertaining to the "management [or] operations" of Capgemini or its clients [including HSBC]. (Contractor Agt. § 7.1) The aforementioned e-mails are clearly Confidential Information and the HSBC materials arguably are as well, depending in part on when they were prepared and whether Plaintiffs have permission of HSBC to be in possession of such materials. As the Agreement requires return of such items to Capgemini, this is directly relevant to the validity of Plaintiffs' claims.[5]

## III. THE FORUM SELECTION CLAUSE APPLIES TO BRYANT

A non-party to a forum selection clause is bound by it if the party is "'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Hugel v. The Corporation of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993) (when signatory to forum selection clause owned 100% of the stock in one non-signatory and 99% of the stock of another non-signatory, both

---

[5] The only remaining claim is for unlawful imprisonment, which pertains to alleged actions not of Capgemini but by an independent entity, office building security. Plaintiffs may separately pursue an action against that entity in North Carolina. In any event, this claim is a result of the contractual relationship between Plaintiffs and Capgemini and relates to the dispute over ownership of Work Product and Confidential Information. It therefore is sufficiently related to the contractual relationship to be encompassed under the forum selection clause.

14

signatory and non-signatories were "equally bound" by the forum selection clause). "A forum selection agreement may be applied not only to disputes between the nominal parties of the agreement but also to related disputes involving other participants to the relevant transactions." *Vijuk Equipment Inc. v. Otto Hohner K.G.*, 1990 WL 172574, *1, 1990 U.S. Dist. Lexis 14354, *2 (N.D. Ill. October 29, 1990) (attached as Ex. B). "Where the alleged conduct of the non-parties is very closely related to the contractual relationship, the forum selection clause should apply to those defendants." *Id.* (forum selection clause applied to signatory's affiliate when both parties' claims arose out of the same "alleged wrongs" involving the "same transactions"); *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984) ("the cases hold that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses."); s*ee Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (same).

This is consistent with North Carolina law which provides that when a non-signatory to a contract seeks to enforce any provision of a contract, that party is bound by the forum selection and arbitration clauses in the contract. *See Conbraco Industries v. Kemper Insurance Companies,* 2006 WL 3063477, *2, 2006 U.S. Dist. Lexis 79910, *5-6 (W.D.N.C. October 25, 2006) (attached as Ex. C); *Washington Square Securities, Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004) ("[w]ell established common law principles dictate that a non-signatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties") (emphasis added).

Bryant is the sole member and only employee of Bryant & Associates; the SOW specifically provides that Bryant himself will be working on the engagement; and Bryant himself signed the related Confidentiality Agreement pertaining to the engagement. Thus, Bryant is

clearly "closely related" and/or is a "transaction participant", and is therefore bound by the forum selection clause. This is especially true given that Bryant has asserted claims on behalf of himself individually seeking to enforce the written Agreement. (*See* Compl. ¶¶ 94-96; *see generally* Compl. ¶¶ 81-113 (all claims, including breach of contract claim, are asserted on behalf of both "Plaintiffs")).

Further, Bryant himself agreed to the forum selection clause by signing the Confidentiality Agreement in his individual capacity. Although Plaintiffs correctly point out that the Confidentiality Agreement is between Bryant & Associates and Bryant, it also expressly provides that Capgemini is an "intended third party beneficiary of this Agreement and Capgemini may directly enforce the terms and conditions therefore." (Confidentiality Agreement ¶ 3) That forum selection clause provides:

> Governing Law. This Agreement shall be governed by and interpreted under the laws of the State of Illinois, without regard to its choice of law principles. No action involving this Agreement may be brought except in the state or federal courts located in Cook County, Illinois. Notwithstanding the foregoing, Capgemini may seek and obtain injunctive relief against Representative in the courts having jurisdiction over Representative.

(Confidentiality Agt. ¶ 4 (emphasis added)).

In the Confidentiality Agreement, Bryant himself specifically agreed to be bound by the Intellectual Property Provisions, including provisions relating to ownership of Work Product, and information pertaining to Confidential Information. As set forth in Section II(B), *supra,* these provisions directly cover whether the property or documents Plaintiffs seek to recover in

16

the majority of the claims asserted in the Complaint are owned by Capgemini, and hence the forum selection clause applies to these claims.[6]

## CONCLUSION

For these reasons, pursuant to 28 U.S.C. § 1404(a), Capgemini respectfully requests that the Court grant its motion and transfer this action to the Northern District of Illinois.

This the 14th day of September, 2012.

                                                                               s/Joseph W. Moss, Jr.
                                                                               Joseph W. Moss, Jr.
N.C. Bar No. 20236
ERWIN, BISHOP, CAPITANO &
    MOSS, P.A.
4521 Sharon Road, Suite 350
Charlotte, North Carolina 28211
Direct: (704) 716-1205
Fax: (704) 716-1201
jmoss@ebcmlaw.com

Attorneys for Defendant
Capgemini Financial Services USA Inc.

OF COUNSEL:
Gerald D. Silver, Esq.
SULLIVAN & WORCESTER LLP
1633 Broadway, 32nd Floor
New York, NY 10019
Direct: (212) 660-3096
Fax: (212) 660.3001
gerry.silver@sandw.com

Attorneys for Defendant
Capgemini Financial Services USA Inc.

---

[6] Plaintiffs' reliance on *Southeast Coastal Development Fund, LLC v. Commercial Real Estate Inc.*, 2009 U.S. Dist. LEXIS 289594 (E.D.N.C. April 3, 2009) is misplaced. In *Southeast*, there were no allegations that the president of plaintiff was a "transaction participant" or identified in the contract as the lone employee on the project, as is the case here. Nor did *Southeast* individual in that case, unlike here, execute a separate agreement containing a forum selection clause.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed and served with the United States District Court, Western district of North Carolina using the Court's CM/ECF system as follows:

> John M. Kirby
> 2501 Blue Ridge Road, Suite 250
> Raleigh, North Carolina 27607

This 14th day of September, 2012

s/Joseph W. Moss, Jr.
Joseph W. Moss, Jr.
