



2 of 2 DOCUMENTS

Warning
As of: Sep 14, 2012

**RUSTIN D. RICE, individually and d/b/a EMMA EQUIPMENT RENTAL; BLUE RIDGE ELECTRIC MOTOR REPAIR INC.; and WNC STARTER & ALTERNATOR, a division of BLUE RIDGE ELECTRIC MOTOR REPAIR, INC., Plaintiffs, Vs. BELLSOUTH ADVERTISING & PUBLISHING CORP; and BELLSOUTH TELECOMMUNICATIONS, INC., f/k/a SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY, Defendants.**

1:02cv119-C

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA, ASHEVILLE DIVISION

*2002 U.S. Dist. LEXIS 13129*

**July 18, 2002, Decided**

**SUBSEQUENT HISTORY:** [*1] *Rice v. Bellsouth Adver. & Publ. Corp., 2002 U.S. Dist. LEXIS 24230 (W.D.N.C. Dec. 12, 2002).*

**DISPOSITION:** Recommended that this defendants' Motion to Transfer be ALLOWED, defendants' Motion to Dismiss be DENIED without prejudice as MOOT, and matter be TRANSFERRED to the Northern District of Georgia for disposition.

**COUNSEL:** For RUSTIN D. RICE, BLUE RIDGE ELECTRIC MOTOR REPAIR, INC., WNC STARTER & ALTERNATOR, plaintiffs: Edward L. Bleynat, Jr., Ferikes & Bleynat, Asheville, NC USA.

For RUSTIN D. RICE, BLUE RIDGE ELECTRIC MOTOR REPAIR, INC., WNC STARTER & ALTERNATOR, plaintiffs: Michael G. Wimer, Arden, NC USA.

For BELLSOUTH ADVERTISING & PUBLISHING CORPORATION, BELLSOUTH TELECOMMUNICATIONS, INC., defendants: James H. Kelly, Jr., Kristin M. Major, Kilpatrick Stockton LLP, Winston-Salem, NC USA.

**JUDGES:** MAX O. COGBURN, JR., UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** MAX O. COGBURN, JR.

**OPINION**

**MEMORANDUM AND RECOMMENDATION**

**THIS MATTER** is before the court upon

defendants' Motion to Dismiss or Transfer. In accordance with the provisions of *28, United States Code, Section 636(b)*, the court has considered defendants' motion to dismiss and alternative motion for transfer this matter to the North District of Georgia. Plaintiffs have filed their response; defendants have filed [*2] a reply. Based upon the pleadings now before the court, the undersigned enters the following findings, conclusions, and recommendation.

## I. Background

In considering defendants' motions, the court has deemed all the allegations of plaintiffs' complaint to be true and will summarize the allegations for the limited purpose of aiding further review. Plaintiffs are engaged in the equipment rental business and contracted with defendants for the placement of a yellow-pages advertisement and white-pages listing concerning their business. Defendants failed to include such advertisement in their directory, and plaintiffs claim substantial damage to their business due to that failure.

Plaintiffs filed this action in the North Carolina General Court of Justice, Buncombe County, and defendants removed it to federal court, based upon complete diversity and an amount in controversy exceeding $ 75,000.

## II. Standard Applicable to Motion to Dismiss

Defendants have moved for dismissal pursuant to *Rule 12(b), Federal Rules of Civil Procedure*, contending that this court lacks subject-matter jurisdiction, personal jurisdiction, improper venue, and failure of plaintiffs to state [*3] a cognizable claim. *Rule 12(b)* authorizes dismissal based upon a dispositive issue of law. *Neitzke v. Williams, 490 U.S. 319, 109 S. Ct. 1827, 1832, 104 L. Ed. 2d 338 (1989)*; *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)*; *Conley v. Gibson, 355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. As the Court discussed in *Neitzke*:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in *Rule 12(b)(6)* confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What *Rule 12(b)(6)* does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

*Id., 109 S. Ct. at 1832* (citation omitted). For the limited purpose of making a recommendation as to disposition of defendants' [*4] motion to dismiss, the court has accepted as true the facts alleged by plaintiffs in the complaint and viewed them in a light most favorable to plaintiffs. Inasmuch as transfer is preferable to the costs of dismissal and refiling. *Fed. R. Civ. P. 1*, the undersigned has limited further substantive consideration to determination of whether the proposed transfer is warranted.

## III. Discussion

Defendants contend that this action must be transferred to the Northern District of Georgia based upon a forum-selection clause contained in the underlying contract. Plaintiffs argue that this matter should not be transferred because (1) they did not read or contemplate the forum-selection clause of the contract; (2) transfer would impose an undue hardship on their struggling business; and (3) enforcement of any forum-selection clause would be contrary to North Carolina public policy.

As will be discussed in greater detail below, disposition of defendants' motion for transfer is governed by the well-developed litany of considerations used in considering motions to transfer made under *28, United States Code, Section 1404(a)*. Plaintiffs' arguments concerning the applicability [*5] of a North Carolina law that bans forum-selection clauses are incorporated into such considerations, but "are not given dispositive weight." *Cable-La, Inc. v. Williams Communications, Inc., 104 F. Supp. 2d 569 (M.D.N.C. 1999)*.

This court's first concern is the impact of *Chapter 22B-3 of the North Carolina General Statutes*, which makes void any provision in a contract for forum selection where that forum is a state other than North Carolina. While such statute will impact the court's analysis below, it is well-settled that where a federal court's jurisdiction is founded upon diversity of

citizenship, *28, United States Code, Section 1332*, the law of the forum state applies to issues of substantive law, *Erie R.R. v. Tompkins, 304 U.S. 64, 78, 82 L. Ed. 1188, 58 S. Ct. 817 (1938)*, while on procedural issues federal law governs, *Hanna v. Plumer, 380 U.S. 460, 465, 14 L. Ed. 2d 8, 85 S. Ct. 1136 (1965)*. Forum selection is a procedural issue, governed in this case by *Section 1404(a)*.

The prevailing law on forum-selection clauses in the Fourth Circuit is, as follows:

> A forum selection clause is generally binding [*6] and will be enforced unless enforcement is "'unreasonable' under the circumstances." *See The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)*. A choice of forum provision may be found unreasonable if (1) its formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) its enforcement would contravene a strong public policy of the forum state. *See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991)*.

*National Enterprises, Inc. v. South Carolina Ins. Co., 165 F.3d 19, 1998 WL 756893*, **2 (4th Cir. 1998).

Reading their state-law argument in the context of federal decisions, plaintiffs' primary contention is that the venue-selection clause is unreasonable because its enforcement would contravene the strong public policy of the forum state, as found in *Chapter 22B-3 of the North Carolina General Statutes*. Similar arguments [*7] have been addressed by other federal courts in North Carolina. In *Newman ex rel. Wallace v. First Atlantic Resources Corp., 170 F. Supp. 2d 585 (M.D.N.C. 2001)*, the district court held, as follows:

> Plaintiff does not claim that the forum-selection clause was the product of fraud or over-reaching, nor does she allege that Florida law will deprive her of a remedy. Instead, Plaintiff contends that enforcement of the forum-selection clause would be against North Carolina public policy and would effectively deprive her of her day in court.
>
> Enacted in 1993, NCGS § 22B-3 provides that "any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable." Although the North Carolina Supreme Court has not yet had occasion to interpret this statute, prior to the enactment of NCGS § 22B-3, the North Carolina Supreme Court had held that forum-selection clauses mandating resolution of disputes outside of North Carolina were valid. *Perkins v. CCH Computax, Inc., 333 N.C. 140, 141, 423 S.E.2d 780, 781 (1992)*. [*8]
>
> * * *
>
> NCGS § 22B-3 would apply to the forum-selection provisions in question. Enactment of a statute is a clear indication of North Carolina's strong public policy against forum-selection clauses requiring out-of-state resolution of disputes. Plaintiff's dispute with Defendants arises from a contract entered into in North Carolina and requires arbitration in Miami-Dade County, Florida, and application of Florida law. The clear language of the statute would nullify the forum-selection clauses in the parties' contract.

*Id., 170 F. Supp. 2d at 591-92*. While the *Newman* court found that the statute would nullify the forum-selection clause, such finding was not the basis of decision, inasmuch as that court later determined that the *Supremacy Clause of the United States Constitution* trumped the state statute because the state law conflicted with the intent of the Federal Arbitration Act. *Id.*

*In an earlier decision more directly on point,*

*however, the Middle District considered the impact of the state statute on a Section 1404 motion to transfer that did not involve arbitration. In Cable-La, Inc., supra, the same district judge as in Newman reasoned, as follows:* [*9]

> In the context of a motion to transfer under *Section 1404(a)*, the Supreme Court has held that the validity of a forum selection clause is determined with reference to federal law, *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988)*, and that such clauses are prima facie valid. *The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972)*.
>
> * * *
>
> A court cannot observe Stewart's pronouncement that state public policies disfavoring forum-selection clauses do not invalidate such clauses, while at the same time holding that such a policy renders a clause at issue per se unreasonable and thus unenforceable. The direction issuing from *Stewart* is that a court integrate such a policy into the multi-factor analysis put in place by Congress to govern *Section 1404(a)* transfer motions, just as it must integrate the presence of the clause itself into the analysis (as a "central" factor). *Stewart, 487 U.S. at 33* (Kennedy, J., concurring); *see also Shaw Group, Inc. v. Natkin & Co., 907 F. Supp. 201, 204 (M.D.La.1995)* (rejecting claim that Louisiana [*10] statutory provision similar to *N.C.Gen.Stat. § 22B-3* renders forum-selection clause unreasonable and unenforceable, in light of *Stewart* ). For this reason, the court will incorporate the public policy concerns of North Carolina, as well as those of Oklahoma, into the multi-factor analysis discussed below, but will not give such concerns dispositive weight.

*Id.*, *104 F. Supp. 2d at 575-76* (parallel citations omitted). *Cable-La* appears to be wholly consistent with the decision of the Court of Appeals for the Fourth Circuit in *Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253 (4th Cir. 1991)*, wherein the appellate court held, as follows:

> *Stewart* . . . rejected a focus on state law and directed courts faced with *§ 1404(a)* motions for change of venue to conduct a proper analysis under that section.

*Id., at 1258*. As defendants make clear on the first page of their motion, transfer is sought under *Section 1404(a)*.

The test used in the Middle District is set forth in *Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519 (M.D.N.C. 1996)*, and is identical to the test developed in this district in *Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F. Supp. 93 (W.D.N.C. 1990)*. [*11] In that case, this district established a litany of considerations applicable to any motion to transfer.

In order to determine whether transfer is proper, a balance must be struck between competing interests; and unless the balance is tipped strongly in favor of the moving party, *Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984)*, a plaintiff's choice of forum should not be disturbed. Upon a motion to transfer, the moving party carries the burden, 1A Moore's Federal Practice, para. 0.345[5] at 4360 (Matthew Bender 1990); and the burden is heavy, *Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F. Supp. 446, 451 (W.D.N.C. 1989)*.

> A defendant carries a particularly heavy burden when it moves pursuant to *[Section] 1404(a)* to transfer an action from a district where venue is proper. As this court has noted previously, it is "black letter law," that "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed."

*Phillips v. S. Gumpert Co., Inc., 627 F. Supp. 725, 726-27 (W.D.N.C. 1986)* [*12] (citations omitted) (quoting *Western Steer Mom ' N' Pop's v. FMT Invs., Inc., 578 F. Supp. 260, 265 (W.D.N.C. 1984))*. The test in

this district for determining whether transfer is proper, set forth in *Jim Crockett Promotions, Inc., supra*, requires consideration of the following elements:

    1. The plaintiff's initial choice of forum;

    2. The residence of the parties;

    3. The relative ease of access of proof;

    4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

    5. The possibility of a view;

    6. The enforceability of a judgment, if obtained;

    7. The relative advantages and obstacles to a fair trial;

    8. Other practical problems that make a trial easy, expeditious, and inexpensive;

    9. The administrative difficulties of court congestion;

    10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and

    11. The avoidance of unnecessary problems with conflict of laws.

*751 F. Supp. at 93*. Courts [*13] should make both a quantitative and qualitative analysis of the factors. *McDevitt & Street Co. v. Fidelity and Deposit Co., 737 F. Supp. 351, 354 (W.D.N.C. 1990)*.

### 1. Plaintiffs' Choice of Forum

Considering the first factor, a plaintiff's choice of forum is traditionally given great weight. While plaintiffs herein could have filed this action in the Northern District of Georgia, no inference of forum shopping is raised where a plaintiff files an action in his home forum. Indeed, based upon the allegations of the complaint, this district was a most appropriate forum in which to file this matter. The first factor weighs heavily in favor of retention.

### 2. The Residence of the Parties

The second factor is neutral, but slightly favors retention. All of the parties do substantial business in this district. At least one of the defendants maintains a substantial place of business directly across from the federal courthouse. The second factor slightly favors plaintiffs, but will be given little weight.

### 3. The Relative Ease of Access of Proof and

### 4. The Availability of Compulsory Process for Attendance of Witnesses and the Costs of Obtaining Attendance of [*14] Willing Witnesses

The court anticipates no problems with compulsory process, assuming that the corporate parties make their employees available voluntarily. The majority of proof will probably be in the form of testimony from employees of defendants, who are likely to be found in Georgia, while the bulk of evidence as to damages will be in the form of testimony from the individual plaintiffs, who are in North Carolina. A quantitative analysis requires this court to conclude that such a transfer would simply shift the burden of travel from one side to the other; thus, this factor is neutral quantitatively, but slightly favors retention qualitatively, since plaintiffs are not as well funded.

### 5. The Possibility of a View

This factor is not relevant, inasmuch as the subject matter of the suit--an advertisement in the yellow pages--is capable of presentation through testimony and exhibits.

### 6. The Enforceability of a Judgment, if Obtained

Not only is the governing law consistent from district to district, a judgment obtained in any federal district is easily transferred to any other federal district. This factor is also neutral.

### 7. The Relative Advantages and Obstacles [*15] to a Fair Trial

There appear to be no obstacles to a fair trial in either district. To the extent "home fields" exist either in the

Atlanta or Asheville areas, which is slight, plaintiffs would be at an advantage in Asheville, while defendants would be at an advantage in the Northern District of Georgia.

A forum-selection clause does not necessarily mean a party is forum shopping. The undersigned takes judicial notice that, as were the defendants in *Cable-La, Inc.,* defendants herein are engaged in a business that covers a large number of states and have a legitimate interest in litigating claims in one forum. *104 F. Supp. 2d at 578*. Indeed, just such a basis for a forum-selection clause was found to be highly appropriate in *Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 113 L. Ed. 2d 622, 111 S. Ct. 1522 (1991)*, wherein the Court enforced a forum-selection clause on a cruise ticket, because the cruise operators had "a special interest in limiting the fora in which it potentially could be subject to suit." *Id., at 593-94*. This factor weighs in favor of transfer.

## 8. Other Practical Problems that Make a Trial Easy, Expeditious, and Inexpensive

Trials are never easy, expeditious, [*16] or inexpensive. Whether this action is tried in Georgia or North Carolina, it will cost these parties an enormous sum, absent an early, amicable resolution.

## 9. The Administrative Difficulties of Court Congestion

While this court has the highest caseload per judgeship in the Fourth Circuit and the seventh highest nationwide, lead counsel for the respective parties should take note that they can usually expect trial within 180 days of the initial pretrial conference. The Asheville Division is kept current, and pretrial proceedings are structured so that few, if any, civil cases are continued from the trial calendars for which they are targeted. Although caseloads per judge are high in this district, such statistic is irrelevant to an expeditious trial in the Asheville Division.

## 10. The Interest in Having Localized Controversies Settled at Home and the Appropriateness in Having the Trial of a Diversity Case in a Forum That is at Home with the State Law that Must Govern the Action and

## 11. Conflict of Laws

This action concerns a contract for services entered into in North Carolina, with all the harm occurring in the Western District of North Carolina, but with the alleged [*17] misfeasance occurring in the Northern District of Georgia. The interest in having this controversy resolved in this forum is strong. Qualitatively and quantitatively, this factor weighs in favor of retention.

As to familiarity with applicable laws, plaintiffs have alleged state common-law claims sounding in breach of contract. Those claims would be governed by the common laws of North Carolina, unless the parties have also entered into a choice-of-laws clause. While familiar with North Carolina law, this court is equally confident that a Georgia court would find the North Carolina claims familiar, inasmuch as the general law surrounding such routine state-law claims finds equivalents in the common law of most states. Thus, such element of this factor is neutral, in light of modern developments in the law and ready access to reference materials.

As the court found in *Cable-La, Inc., 104 F. Supp. 2d 569, the above factors, weighed in the absence of a forum-selection clause, would likely favor retention. Because the parties entered into a forum-selection clause, however, the court must discount the heavy weight that would otherwise be assigned to plaintiffs' choice of forum and assign* [*18] *all that weight to the choice of forum expressed in the contract.*

*The court has given both weight and consideration to plaintiffs' argument that forum-selection clauses are against the public policy of North Carolina. In a North Carolina forum, that argument may have carried the day. As other federal courts have found in analyzing the same issue, that public policy is expressed only in a statute and is contrary to the well-settled common law of the state. In addition, such policy is inconsistent with decisions of the United States Supreme Court, Stewart, 487 U.S. 22, 101 L. Ed. 2d 22, 108 S. Ct. 2239, Carnival Cruise Lines, 499 U.S. 585, 113 L. Ed. 2d 622, 111 S. Ct. 1522, and may well run afoul of the Contract Clause of the United States Constitution, see generally Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 57 L. Ed. 2d 727, 98 S. Ct. 2716 (1978)*, inasmuch as the statute does not appear related to any broad societal interest and works against only nonresidents at the expense of interstate commerce.

While this court is not unsympathetic to plaintiffs' position, they have not demonstrated that the forum-selection clause is unreasonable so as to make the remaining factors override the contractual choice of

forum. Provisions [*19] concerning the venue for litigation are now common in the marketplace, and where the Supreme Court will hold a consumer-passenger to a forum-selection clause on the back of a ticket, as it did in *Carnival, supra, it is hard to fathom how any court could find that plaintiffs, who are apparently doing business under a number of corporate names, are any less sophisticated than the consumer in Carnival.* The undersigned, therefore, will recommend to the district court that this matter be transferred in accordance with *28, United States Code, Section 1404(a)*, to the Northern District of Georgia for disposition.

**RECOMMENDATION**

IT IS, THEREFORE, RESPECTFULLY **RECOMMENDED** that defendants' Motion to Transfer be **ALLOWED,** defendants' Motion to Dismiss be **DENIED** without prejudice as **MOOT,** and this matter be **TRANSFERRED** to the Northern District of Georgia for disposition.

The parties are hereby advised that, pursuant to *28, United States Code, Section 636(b)(1)(C)*, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within ten (10) days of service of [*20] same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. *Thomas v. Arn, 474 U.S. 140, 88 L. Ed. 2d 435, 106 S. Ct. 466 (1985), reh'g denied, 474 U.S. 1111, 88 L. Ed. 2d 933, 106 S. Ct. 899 (1986)*; *United States v. Schronce, 727 F.2d 91* (4th Cir.), *cert. denied, 467 U.S. 1208, 81 L. Ed. 2d 352, 104 S. Ct. 2395 (1984)*.

This *18th* day of *July,* 2002.

**MAX O. COGBURN, JR.**

**UNITED STATES MAGISTRATE JUDGE**