



Cited
As of: Sep 14, 2012

**CONBRACO INDUSTRIES, Plaintiff, vs. KEMPER INSURANCE COMPANIES, and LUMBERMENS MUTUAL CASUALTY CO., Defendants.**

**CIVIL NO. 3:06CV256-C**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA, CHARLOTTE DIVISION**

*2006 U.S. Dist. LEXIS 79910*

**October 25, 2006, Decided**

**COUNSEL:** [*1] For Conbraco Industries, Inc., Plaintiff: Richard Steven DeGeorge, Charlotte, NC.

For Kemper Insurance Company, Lumbermen's Mutual Casualty Company, Defendant: Thomas Whitehead Murrell, III, Helms, Mulliss & Wicker, PLLC, Charlotte, NC.

**JUDGES:** Carl Horn, III, United States Magistrate Judge.

**OPINION BY:** Carl Horn, III

**OPINION**

*MEMORANDUM AND ORDER*

**THIS MATTER** is before the Court on the "Defendants' Motion to Compel Arbitration and Stay Proceedings" (document # 5) filed September 8, 2006. The Plaintiff filed a "Memorandum in Opposition..." (document # 8) on September 29, 2006. The Defendant then filed a "Reply to Plaintiff's Opposition..." (document # 10) filed on October 13, 2006.

This matter has been referred to the undersigned Magistrate Judge pursuant to *28 U.S.C. § 636(b)(1)(B)*, and the Defendants' Motion is ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will grant the Defendants' Motion to Compel Arbitration, and *stay* this matter pending the outcome of that proceeding, as discussed below.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiff, Conbraco [*2] Industries, Inc., is a valve manufacturer, with facilities in Matthews, North Carolina, and in Pageland and Conway, South Carolina. In accordance with Plaintiff's statutory obligation, Conbraco obtained workers' compensation and employers liability insurance from Defendant Lumbermens Mutual

Casualty Co., an insurance carrier which markets insurance products under the Kemper Insurance Companies trademark, effective January 1, 2002 through January 1, 2004. [1] In connection with this insurance, the parties entered into a series of Insurance Program Agreements ("Agreements") which govern the contractual relationship between the parties. The Agreements require mandatory binding arbitration of disputes and include a forum-selection clause under Article VIII(A), which specifically provides:

> In the event of any dispute between Kemper and the Insured with reference to the interpretation, application, formation, enforcement or validity of this Agreement or any other agreement between them, or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Agreement such dispute, upon written request of either party, shall be submitted [*3] to the decision of a board of arbitration composed of two arbitrators and an umpire meeting in New York unless otherwise mutually agreed.

1    Lumbermans issued policies of workers' compensation and employee liability insurance to Conbraco under Policy No. 5BA165265-00 for the effective dates of January 1, 2002 to January 1, 2003 and Policy No. 5BA165265-01 for the effective dates of January 1, 2003 to January 1, 2004.

On April 30, 2003 the insurance coverage was cancelled at Plaintiff's request. However, Defendants continue to provide insurance services for Plaintiff's past liabilities under the workers' compensation and employers liability statutes of various states, pursuant to the Agreements.

On May 25, 2006, Defendants served a written demand on the Plaintiff following Defendants' unsuccessful attempts to collect $ 1,590,080 for workers compensation services provided in accordance with the Agreements.

On June 20, 2006, the Plaintiff filed a Complaint against the Defendants which asserts breach of contract [*4] claims arising from deception and poor performance by Defendants in relation to Plaintiff's workers' compensation insurance program.

On September 8, 2006, Defendants filed the subject Motion to Compel Arbitration and Stay Proceedings seeking to enforce the arbitration provisions in the Agreements.

In the Plaintiff's Memorandum in Opposition, Conbraco contends that the arbitration clause is unenforceable because not all renewals of the Agreement have been signed, and complains that arbitrating in New York would be inconvenient.

The Defendants' Motion has been fully briefed and is, therefore, ripe for determination.

**II.** *DISCUSSION OF CLAIMS*

**A.** *Arbitration Clause*

The Federal Arbitration Act ("FAA") establishes a federal policy favoring the enforcement of written agreements to arbitrate. Specifically, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *9 U.S.C. § 2 (1999)*. The FAA requires courts to stay the proceeding and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. [*5] *See 9 U.S.C. § 3(1999)*.

The Supreme Court has instructed that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmore v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)*, quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20, 26, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)*. "Pursuant to that liberal policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone, 460 U.S. at 24-25*. *See also Choice Hotels Intern., Inc. V. BSR Tropicana Resort, Inc., 252 F. 3d 707, 710 (4th Cir. 2001)*; *Long v. Silver, 248 F.3d 309, 315-16 (4th Cir. 2001)*; *and O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir. 1997)*.

Although the subject arbitration clauses are not in the insurance policies themselves, the Agreements contain a clear and unequivocal arbitration clause as described above. Nor are the arbitration clauses [*6] rendered unenforceable, as the Plaintiff contends, because subsequent renewal documents were unsigned. *Accord Al Salamah Arabian Agencies Company Ltd. v. Reece, 673 F. Supp. 748, 750 (M.D.N.C. 1987)* ("[c]ourts have held that where subsequent conduct of parties manifests an intent to adhere to a written contract, the contract will be enforced despite the absence of signatures"); and *Allen v. National Video, Inc., 610 F. Supp. 612, 631 (S.D.N.Y. 1985)* ("written contract need not be signed to be binding against a party, so long as the party indicated through performance of its terms or other unequivocal acts that it intends to adopt the contract").

Moreover, it is well settled in the Fourth Circuit that where a party, even a nonsignatory to the disputed contract, seeks to enforce any other provision of a contract, that party is bound by the arbitration provision in that contract. *See Washington Square Securities, Inc. v. Aune, 385 F.3d 432, 435 (4th Cir. 2004)* ("[w]ell-established common law principles [including estoppel] dictate that a nonsignatory can enforce, *or be bound by,* an arbitration provision within a contract executed [*7] by other parties") (emphasis added); *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 417 (4th Cir. 2000)* (where nonsignatory asserted rights under contract, it was equitably estopped from avoiding arbitration clause in that contract), *citing Thomson-CSF v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)* (recognizing five theories for binding nonsignatories to arbitration agreements: "incorporation by reference, assumption, agency, veil- piercing/alter-ego and *estoppel*") (emphasis added); *and Davidson v. Becker, 256 F. Supp.2d 377, 383 (D. Md. 2003)* ("[t]he Fourth Circuit has cited with approval to a Second Circuit case that enumerated five specific instances where non-signatories could claim the protection of an arbitration agreement).''

Accordingly, because the parties' Agreements contained a clear, unequivocal, and otherwise enforceable arbitration clause, the Defendants' Motion to Compel arbitration must and will be granted.

### B. *Forum Selection Clause*

Under equally well settled Fourth Circuit law, a forum selection clause is presumed enforceable unless there is a clear showing [*8] that its provisions are "unreasonable." *See, e.g., Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996)* and the cases cited therein. Choice of forum clauses will be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the complaining party of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state. *Allen, 94 F.3d at 928*. None of these limited bases for declining to enforce a forum selection clause applies here.

The Plaintiff contends only that the New York forum will be inconvenient. It is well settled, however, that a showing of mere inconvenience is not sufficient to overcome the presumption of validity and enforceability of the subject forum selection clause. Rather, a successful challenge requires a party to show that "the specified forum is so seriously inconvenient, that he would be deprived of an opportunity to participate in the adjudication" if it [*9] is enforced. *Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp., 696 F.2d 315, 317 (4th Cir. 1982)* (internal quotations omitted). In this case, while North Carolina would no doubt be a more convenient forum, the Plaintiff has failed to establish the kind of serious inconvenience required to justify an exception to the general rule favoring the enforceability of forum selection clauses. Accordingly, the subject forum selection clause must and will also be enforced.

### III. *ORDER*

**THEREFORE, IT IS HEREBY ORDERED:**

1. The Defendant's Motion to Compel Arbitration and to Stay Proceeding (document # 5) is **GRANTED,** that is, the parties are **ORDERED** to submit their dispute to binding arbitration pursuant to the provisions of their arbitration agreement; and this matter is **STAYED** pending the outcome of the arbitration.

2. Within 30 days of the issuance of an arbitration award or other resolution of that proceeding, the parties' counsel, jointly and severally, shall report the results to the Court.

3. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; *and to*

*the Honorable Robert J. Conrad,* [*10] *Jr.*

**SO ORDERED.**

Signed: October 25, 2006

Carl Horn, III

United States Magistrate Judge